# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CORTNEY LAMAR ROLLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:16-cv-01039-VEH-JEO |
| ) | |
| LT. JENKINS, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. (Doc. 9). The plaintiff names the following defendants in the amended complaint: Administrative Lieutenant Muhammed Jenkins and Administrative Sergeant Joshua Murphee. (*Id.* at 3). The plaintiff seeks monetary and injunctive relief. (*Id.* at 4). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government

officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atlantic*

*Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II.  Procedural History

On October 31, 2016, the plaintiff was notified that his complaint was deficient and was directed to correct the deficiencies in the following manner:

> The plaintiff has failed to provide the <u>COMPLETE</u> names and/or addresses of all defendants and has failed to set forth his claims adequately.  The plaintiff must amend his complaint by completing a new § 1983 complaint form.  The new complaint must be labeled "Amended Complaint" and "Case No. 2:16-cv-01039-VEH-JEO" must be written on the first page.
>
> In the amended complaint, the plaintiff must provide the complete names of all defendants or as much of the names as known, and any identifying information (such as gender, race, approximate age, job title or position), and a complete address for each defendant.

> The plaintiff should name as defendants only those persons who violated his constitutional rights. The plaintiff must identify those persons as defendants both in the heading and in Part III of the complaint.
>
> The plaintiff should also state clearly how each named defendant violated his constitutional rights, the date(s) on which the incident(s) occurred, and where the incident(s) occurred. THE PLAINTIFF MUST CLEARLY SET FORTH THE **FACTS** CONCERNING ANY INCIDENT ABOUT WHICH HE COMPLAINS. The plaintiff is ADVISED that conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). The amended complaint must include all of the plaintiff's claims in this action; IT SHOULD NOT REFER BACK TO THE ORIGINAL COMPLAINT. The plaintiff is ADVISED that the Court will consider **only** the claims set forth in the amended complaint. After completing the new complaint form, the plaintiff should mail it to the Clerk of the Court.

(Doc. 7 at 1-2).

On November 21, 2016, the plaintiff filed an amended complaint naming only Administrative Lieutenant Muhammed Jenkins and Administrative Sergeant Joshua Murphee as defendants. (Doc. 9).[1] However, some of the allegations in that pleading against these defendants are better supported by facts alleged in the original complaint. Therefore, the original complaint (doc. 1) shall also be considered, but only to the extent the facts alleged therein support the claims against Jenkins and Murphee in the amended complaint.

---

[1] In his original complaint, the plaintiff named Jenkins and Murphee as defendants, as well as Regional Coordinator Shirell Price, Commissioner Dunn, Associate Warden Grantt Culliver, Warden Bolling, Warden Myree and Classification Supervisor Bonner as defendants. (Doc. 1 at 3).

### III. Factual Allegations

On June 16, 2016, the plaintiff was transferred from general population at W.E. Donaldson Correctional Facility (WEDCF) to a segregation unit at St. Clair Correctional Facility (SCCF). (Doc. 9 at 3). The plaintiff was not told the reason for the placement or afforded a hearing concerning the matter, and, according to him, all of his "legal materials" and "religious materials" have been "taken without just cause and kept from" him. (Doc. 9 at 3; Doc. 1 at 4). The plaintiff admits he has "several enemies . . . from violent incidents of the pas[t]" at WEDCF. (Doc. 1 at 3).

On June 18, 2016, the plaintiff was "returning from pill call while handcuffed." (Doc. 9 at 3). Although he had not "disobeyed any direct orders," Lt. Jenkins sprayed him in the face, neck and chest with "mace" and "slammed him on" the ground. (*Id.* at 3). "Sgt. Murphee created the situation by twisting" the plaintiff's "arm [while] yelling Code Red." (*Id.*). Jenkins and Murphree threatened to kill the plaintiff because he has been labeled as one of the inmates who stabbed Lt. Carter at SCCF. (*Id.*). The plaintiff asserts he was "antagonized, provoked, sprayed with mace and assaulted without just cause." (*Id.* at 3-4).

After he was attacked by defendants Jenkins and Murphree, the plaintiff "was denied medical treatment for" 30 minutes "while being held" in the segregation unit corridor. (Doc. 1 at 4). He was then "thrown back" into his "lockdown cell and

denied medical treatment." (Doc. 9 at 4). The plaintiff declares his "vision is impaired and it's currently blurry." (Doc. 1 at 4).

### IV. Analysis

**A.     Injunctive Relief**

As part of his request for relief, the plaintiff asks that the Alabama Department of Corrections be ordered "to demote" defendants Murphee and Jenkins "or terminate" their employment. (Doc. 9 at 4). However, "federal courts have no authority to" demote "or to fire state employees." *Newman v. Alabama,* 559 F.2d 283, 288 (5th Cir.),[2] *cert. denied,* 438 U.S. 915 (1978). Therefore, the relief requested is not available.

**B.     Eleventh Amendment Immunity**

A law "suit against the State [of Alabama] and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)). No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a

---

[2] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).  Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the state itself."  *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

Defendants Jenkins and Murphee are employees of the Alabama Department of Corrections, an agency of the State of Alabama.  Because the plaintiff's lawsuit against Jenkins and Murphee in their official capacities is a suit against the state itself, Eleventh Amendment immunity prohibits his claims for monetary damages.  The remainder of this report and recommendation addresses the plaintiff's claims for monetary damages against defendants Jenkins and Murphee in their individual capacities.

### C.     First Amendment Freedom of Religion

The plaintiff alleges his "religious materials" have been confiscated and kept from him.  (Doc. 9 at 3).  He provides no further description and does not declare defendants Murphee and Jenkins are responsible for the deprivation.   Such vague, conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Accordingly, the claim is due to be dismissed.

### D.     Eighth Amendment

#### 1.     Excessive Force

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

"The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir.

2002) (citing *Whitley*, 475 at 320-21). Therefore, if a non-compliant inmate has been restrained by guards and no longer poses a threat, he "cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain." (*Id.*).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Finally, it is well established that a prison official need not

> "actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an [official] who is present at the scene and who fails to take reasonable steps to protect the victim of

9

another [official's] use of excessive force, can be held liable for his nonfeasance."

*Skrtich v. Thornton*, 280 F.3d at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-1331 (11th Cir. 2008) (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000)).

The incident in the plaintiff's case occurred while he was handcuffed and being escorted from pill call. (Doc. 1 at 3). Although he disobeyed no orders, defendant Murphee twisted the plaintiff's arm while shouting Code Red, and defendant Jenkins sprayed mace on his face, neck and chest and slammed him on the ground. Since there is no indication the plaintiff posed a threat to the defendants or that the defendants' actions were necessary to restore discipline and security, the incident reeks of "gratuitous or disproportionate force that has no object but to inflict pain." *Skrtich v. Thornton*, 280 F.3d at 1304. Thus, in evaluating factors one through four in the context of the excessive force claims against defendants Murphee and Jenkins, those factors weight in favor of the plaintiff.

The alleged motive for the attack was retribution because defendants Murphee and Jenkins believed the plaintiff was involved in stabbing another corrections officer. (*Id.* at 3). The defendants also threatened to kill the plaintiff and delayed his decontamination for 30 minutes, which suggests their motives for attacking him

10

were nefarious. (*Id*.). The plaintiff asserts he still has vision issues related to the attack. (*Id.* at 4). This residual effect is sufficient to raise the plaintiff's injury above a *de minimis* level. Even if it did not, the fifth factor still weighs in the plaintiff's favor because the use of force was "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9 (internal citations omitted).

The plaintiff has stated plausible Eighth Amendment excessive force claims against defendants Murphee and Jenkins, and they should be directed to respond.

### 2. Deliberate Indifference to Serious Medical Needs

> Deliberate indifference to a [prisoner's] serious medical needs requires 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need. *See Burnette* [*v. Taylor*], 533 F.3d [1325] at 1330 [(11th Cir. 2008)]. A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* For liability, the defendant must 1) have subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence. *Id.*
>
> Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay: "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999).

*Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010).

Defendants Jenkins and Murphee knew the plaintiff had been sprayed in the face, neck and chest with mace, but place him in the segregation unit corridor to delay his receipt medical attention for a period of 30 minutes. (Doc. 1 at 4). The

plaintiff alleges his vision now is impaired and blurry. (*Id.*). The physical effects and potential health risks associated with continued exposure to mace absent decontamination are well known to any corrections officer. Defendants Murphee and Jenkins disregarded that risk and intentionally refused to provide timely treatment in order to prolong the plaintiff's suffering. As a result, the plaintiff's vision is blurry. The plaintiff has alleged sufficient facts, for 1915A screening purposes, to state a plausible Eighth Amendment claim against defendants Jenkins and Murphee for deliberate indifference to his serious medical needs, and they should be directed to respond.

### E.     Fourteenth Amendment Due Process

#### 1.     Deprivation of Legal Materials

The plaintiff alleges his "legal materials" have been confiscated and kept from him. (Doc. 9 at 3). He does not describe the nature of these materials and does not declare defendants Murphee and Jenkins are responsible for the deprivation. Such vague, conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Accordingly, this claim is due to be dismissed.

Alternatively, and assuming Murphee's and Jenkins' involvement in the deprivation, the plaintiff's allegations implicate his "clearly established . . . constitutional right of access to the courts." *Barbour v. Haley*, 471 F.3d 1222, 1225

(11th Cir. 2006). The right, as defined in *Bounds v. Smith*, 430 U.S. 817, 825 (1977), requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court. This can be accomplished by one of several alternatives, including the appointment of counsel, providing the assistance of other persons trained in the law, or providing access to a law library. It must be emphasized that these are all *alternative* ways of guaranteeing a prisoner's right of access to the court; they are not cumulative of one another. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). For example, an inmate represented by an attorney does not also have the right to have access to a law library.

Furthermore, our courts have made it clear that inmates "have no inherent or independent right of access to a law library or to legal assistance" (or in this case the plaintiff's possession of his 'legal materials'), but instead "must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). In other words, "an inmate cannot establish relevant actual injury simply . . . in some theoretical sense." *Lewis*, *supra*, 518 U.S. at 351. He must provide evidence such as a denial or dismissal of a direct appeal, post-conviction petition, or civil rights case because of the corrections officers' actions. The naked allegation that a plaintiff has been denied access to his 'legal material' is not sufficient. *See Sabors v. Delano*, 100 F. 3d 82, 84 (8th Cir. 1996)

13

(denial of access to a particular law book insufficient to state an access to the courts claim).

The plaintiff has not alleged facts showing he suffered any plausible actual injury because defendants Murphee or Jenkins confiscated his legal material. Moreover, the plaintiff's litigation of the case *sub judice* clearly establishes the defendants' position did not thwart his ability to pursue this civil rights case. Accordingly, the plaintiff has failed to state an access to courts claim upon which relief can be granted against defendants Murphee and Jenkins.

**2.     Segregation**

The plaintiff may be attempting to state "Ex Post Facto" and certainly procedural due process claims against defendants Murphee and Jenkins concerning his transfer from general population at SCCF to a segregation unit at WEDCF. (Doc. 1 at 3; Doc. 9 at 3). "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325–326, (1867)). The undersigned cannot conceive of a scenario in which the ex post facto jurisprudence is applicable to the plaintiff's facts. Additionally, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that

Amendment, not [for example, the ex post facto clause or] the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 813 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).  As set out *infra*, the procedural aspect of the due process clause provides the constitutional grounds upon which the claims in this subsection rest.  Thus, the plaintiff's *ex post facto* claims against defendant Murphee and Jenkins defendants are due to be dismissed for failure to state a claim.

As for the procedural due process claims, the plaintiff does not specifically allege defendants Murphee and Jenkins are responsible for, or have the authority to order or rescind his transfer and placement.  Accordingly, the plaintiff has failed to state procedural due process claims against these defendants, and the claims are due to be dismissed.

Alternatively, and as to the procedural due process claims only, the undersigned assumes defendants Murphee and Jenkins are responsible for the plaintiff's initial and continued placement.  To state a "procedural due process claim, [the plaintiff] must plausibly allege three elements: (1) "a deprivation of a constitutionally[ ] protected liberty or property interest"; (2) "state action"; and (3) "constitutionally inadequate process."  *Jackson v. Brewton*, 595 F. App'x 939, 942 (11th Cir. 2014) (quoting *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994)).  State action is present because defendants Murphee and Jenkins are state employees.

The plaintiff's assertion that he was transferred and afforded no notice or hearing before his segregation placement is an attempt to allege inadequate process. (Doc. 9 at 3) (wherein the plaintiff declares he was not "told why" he was "being placed in seg." and afforded no hearing when he first arrived at WEDCF on June 16, 2016). Whether some type of process was constitutionally required depends upon whether the plaintiff can plausibly establish he has a protected liberty interest in remaining free from segregation.

From a federal constitutional perspective, "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Therefore, an inmate does not have "a right to remain in general population" as opposed to "administrative segregation." *Id.* at 480 (citing generally, *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Vitek v. Davis*, 445 U.S. 480, 493 (1980)). Nor "does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Meachum*, 427 U.S. at 225.

For the reasons set out *supra,* no liberty interests were implicated as a result of the plaintiff's transfer to WEDCF and placement in segregation without being told why or being afforded a hearing. To the extent the plaintiff's claims against

16

defendants Murphee and Jenkins hinge on these facts and singular reliance on the Due Process Clause, the plaintiff has failed to state a claim upon which relief can be granted.

As for the existence of a state created liberty interest, the plaintiff was required to but has not set forth facts to plausibly suggest his transfer or "segregated confinement . . . present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. *Sandin*, 515 U.S. at 486. He has not described the conditions between one prison or another, and in particular between segregation and to general population. As such, there is no evidence to suggest his placement has caused him substantial hardship comparatively speaking. In short, there are no facts from which to infer a "deprivation" that imposes an atypical and significant hardship on him "in relation to the ordinary incidents of prison life." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (quoting *Sandin v. Conner,* 515 U.S. at 484). Accordingly, and to the extent the plaintiff's generally complains about the transfer and placement in segregation without notice and hearing, he has failed to show the existence of a state created liberty interest.

Finally, the undersigned addresses the plaintiff's contention that he has been relegated to indefinite segregation, although he does not explain what is meant by the phrase. (Doc. 1 at 3). Nonetheless, assuming the plaintiff still is being housed in segregation, he has remained in that placement for approximately nine months.

Additional pertinent facts to the constitutional question include the plaintiff's declaration that he has no "institutional disciplinary reports or infractions," his admission that he has several enemies at WEDCF, and his admission that prison officials believe he and other inmates stabbed an SCCF officer. (*Id.*). The undersigned concludes the plaintiff is being housed in administrative segregation.

> The Supreme Court has held that
>
> administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner-which will have been ascertained when determining to confine the inmate to administrative segregation-and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner. Likewise, the decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of-most typically, the progress of the investigation. In both situations, the ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations.

*Hewitt,* 459 U.S., at 477 n. 9.

The plaintiff does not set forth facts to suggest his placement in administrative segregation is a pretext for indefinite confinement. Instead, the facts show his placement is based on security concerns, one of which is his own safety due to enemies in general population. Another concern is the more likely than not fact that he either has been or is being investigated for stabbing a corrections officer.

Considering these facts, the nine month duration of the plaintiff's confinement does not exceed what an inmate might expect to encounter in the ordinary course of his prison sentence. *See Al-Amin v. Donald*, 165 F. App'x 733, 735 (11th Cir. 2006) (no liberty interest when inmate placed in administrative segregation for an aggregate of three years).

### V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the First Amendment Freedom of Religion and the Eighth Amendment excessive force and delayed medical care claims against Jenkins and Murphee be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted. The undersigned **FURTHER RECOMMENDS** the remaining claims be **REFERRED** to the undersigned for further proceedings.

### VI. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error. *See*

28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

**DATED** this 24th day of March, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge